UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JAMES J. GIARLA,
AMBER L. GIARLA,

                              Plaintiffs,

        v.                                                          **DECISION AND ORDER**

                                                                        17-CV-359S

THE COCA-COLA COMPANY,
COCA-COLA REFRESHMENTS USA, INC.,

                              Defendants.

## I.        Introduction

This is a removed diversity personal injury action for injuries suffered by Plaintiff James Giarla while driving a tractor trailer on the Queen Elizabeth Way in Ontario, Canada.  Plaintiffs are New York residents (Docket No. 1, Ex. B, Compl. ¶ 1; Docket No. 1, Notice of Removal ¶10).  Defendants are corporations incorporated in Delaware and do business in Georgia (Docket No. 1, Ex. B, Compl. ¶¶ 2-3, 20-21; Docket No. 1, Notice of Removal ¶10).

James Giarla was hit by a truck owned by Coca-Cola Refreshments Canada. Plaintiffs now allege that Defendants, the Coca-Cola Company and Coca-Cola Refreshments USA, Inc., are responsible for Coca-Cola Refreshments Canada in this action.

For the reasons stated herein, Defendants' Motion for Judgment to Dismiss the Complaint (Docket No. 16) is granted.  Plaintiffs argue that they should be granted leave to replead (Docket No. 19, Pls. Memo. at 18).  Leave to amend is granted; Plaintiffs shall

file and serve their Motion for Leave to Amend (with the proposed Amended Complaint) within fourteen (14) days of entry of this Order.

## II.      Background

### A.  Defendant Coca-Cola's Corporate Organization

Pertinent to this case, Plaintiffs allege the corporate affiliation of Coca-Cola Company ("Coke") and the history of Defendant Coca-Cola Refreshments USA ("CCR"), the wholly owned subsidiary of Coke (Docket No. 1, Ex. B, Compl. ¶¶ 19-21).  CCR is Coke's largest bottler (id. ¶¶ 16-18).  Coke acquired Coca-Cola Enterprises and Coca-Cola Enterprises was renamed Coca-Cola Refreshments, Inc. (id. ¶¶ 16, 18).

Plaintiffs allege the Coca-Cola Refreshments Canada ("CCR-Canada") was a wholly owned subsidiary of CCR as of 2015 (id. ¶¶ 27-28, 37, 64-68).  They claim that there were not separate "operating segments" for the United States and Canada but a unified operation under the "North America segment" caption (id. ¶ 71).  They argue that Coke did not distinguish between CCR and CCR-Canada, allegedly treating them as one operating segment for North America (id. ¶ 73).  As an example of the continental perspective, Plaintiffs point to the January 2016 transfer by Coke of bottling and related supply chain operations from CCR and CCR-Canada to a Bottling Investment segment (id. ¶ 82), although this change post-dates James Giarla's accident.

Plaintiffs conclude that Coke and CCR "should be held accountable to a New York State resident and not be allowed to escape that responsibility by asserting a corporate separation that exists in name only" (id. ¶ 89).

B.  Queen Elizabeth Way Collision, February 25, 2015

James Giarla was a tractor trailer driver.  On February 25, 2015, he was driving from Michigan back to his employer in Blaisdell, New York, passing through Ontario, Canada, on the Queen Elizabeth Way (Docket No. 1, Ex. B, Compl. ¶¶ 33-35).  Plaintiffs allege that driver Francesco Rappazzo, employed by CCR-Canada, drove a CCR-Canada truck, and collided into James Giarla's tractor trailer on the Queen Elizabeth Way in Grimsby, Ontario (id. ¶ 38).  Plaintiffs contend that CCR-Canada is a wholly owned subsidiary of Coke (id. ¶ 37; see Docket No. 15, Am. Ans. ¶ 7 (admitting allegation that CCR-Canada owned the truck and it was operated by Rappazzo in the course of his employment with CCR-Canada)).

C.  Plaintiffs' New York State Complaint (Docket No. 1, Ex. B)

Plaintiffs sued in New York State Supreme Court, Niagara County (Docket No. 1, Ex. B, Compl.).  Plaintiffs did not set forth a formal First Cause of Action, but they allege a claim for negligence for the injuries to James Giarla (see id. ¶¶ 30-89) and a Second Cause of Action asserting a consortium claim for Plaintiff Amber Giarla (id. ¶¶ 90-91).

For their state action, Plaintiffs alleged New York State courts jurisdiction over this matter (see id. ¶¶ 46-63).  Plaintiffs claim that they had only minimal contacts with the Province of Ontario because it was the site of the accident, stating that James Giarla drove through the Province but otherwise had his medical treatments exclusively in New York (id. ¶¶ 46-54).  James Giarla received workers' compensation in New York and no income or other benefits in Ontario (id. ¶¶ 51, 53, 52).

They next argue that Defendants (Coke, CCR, and non-party CCR-Canada) have significant contacts with New York (id. ¶¶ 55-63).  Plaintiffs claim that Coke and CCR has

common ownership over Coke's wholly own subsidiary, CCR-Canada, and minimal contacts in Canada (id. ¶¶ 64-70).  They contend that Coke considered the United States and Canadian operations the "North American" operations (id. ¶¶ 71, 73, 74).  Plaintiffs, however, did not sue CCR-Canada.

Plaintiffs next assert prejudice to them if Ontario law applies in this case, concluding that New York law should apply (id. ¶¶ 83-89).

### D.  Answer and Proceedings

Defendants separately answered the Complaint (id., Exs. C (Ans. of Coca-Cola Company), D (Ans. of Coca-Cola Refreshments USA)).  They separately served demands pursuant to N.Y. CPLR 3017(c) for Plaintiffs to allege the amount of their damages (id. Exs. F, G).  Plaintiffs responded on April 21, 2017, alleging damages totaling at least $2 million, but claiming that James Giarla then still was undergoing medical treatment (id., Ex. H) that might increase their damages.

Defendants then removed this action on April 27, 2017 (Docket No. 1).  They then jointly amended their Answer (Docket No. 15).

### E.  Defense Motion for Judgment on Pleadings Dismissing the Complaint (Docket No. 16)

On September 19, 2017, Defendants filed their present Motion[1] for Judgment on the Pleadings to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(c) (Docket No. 16).

---

[1]In support of motion, Defendants submit their attorney's Affirmation, exhibit (state court Summons and Complaint), and Memorandum of Law, Docket No. 16; and in reply, they submitted their Reply Memorandum, Docket No. 21.  In opposition, Plaintiffs submit their Memorandum of Law with exhibits, Docket No. 19.

Defendants then moved to stay discovery, Docket No. 25, which Magistrate Judge Foschio granted, Docket No. 28.

Responses to this motion, as extended (see Docket Nos. 18, 17), were due by October 9, 2017, and reply was due by October 16, 2017 (Docket No. 20).

### III.   Discussion

A.  Applicable Standards

1.  Motion for Judgment on Pleadings to Dismiss

Under Rule 12(c) of the Federal Rules of Civil Procedure, after pleadings are closed a party "may move for judgment on the pleadings," Fed. R. Civ. P. 12(c).  Since this rule calls for a summary proceeding that may deprive the opponent of the opportunity to a full and fair hearing on the merits of their claims, the movants must show a clear right to judgment on the pleadings, that there are no material issues of fact to be resolved, and entitlement to judgment as a matter of law, 5C Charles A. Wright, Arthur R. Miller, Federal Practice and Procedure § 1368, at 223 (Civil 3d ed. 2004).  "A motion for judgment on the pleadings . . . theoretically is directed towards a determination of the substantive merits of the controversy; thus federal courts are unwilling to grant a judgment under Rule 12(c) unless it is clear that the merits of the controversy can be fairly and fully decided in this summary manner," id., § 1369, at 259.

Rule 12(c) "should be read in conjunction with several other federal rules authorizing pretrial motions, especially the various Rule 12(b) motions to dismiss," id. at 258.  Rule 12(b)(6), in turn, provides that the Court cannot dismiss a Complaint unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a Complaint must be dismissed

if it does not plead "enough facts to state a claim to relief that is plausible on its face," id. at 570 (rejecting longstanding precedent of Conley, supra, 355 U.S. at 45-46); Hicks v. Association of Am. Med. Colleges, No. 07-00123, 2007 U.S. Dist. LEXIS 39163, at *4 (D.D.C. May 31, 2007).

To survive a motion to dismiss, the factual allegations in the Complaint "must be enough to raise a right to relief above the speculative level," Twombly, supra, 550 U.S. at 555; Hicks, supra, 2007 U.S. Dist. LEXIS 39163, at *5.  As reaffirmed by the Court in Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009),

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [Twombly, supra, 550 U.S.] at 570 . . . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556 . . . .  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Ibid.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'  Id., at 557 . . . (brackets omitted)."

Iqbal, supra, 556 U.S. at 678 (citations omitted).

A Rule 12(c) motion is addressed to the face of the pleading, "otherwise, a summary judgment motion or trial is necessary," 5C Federal Practice and Procedure, supra, § 1368, at 248, 251.  The pleading is deemed to include any document attached to it as an exhibit, Fed. R. Civ. P. 10(c), or any document incorporated in it by reference. Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985).

In considering such a motion, the Court must accept as true all the well pleaded facts alleged in the Complaint.  5C Federal Practice and Procedure, supra, § 1368, at 227, 230, 237-38; Oneida Indian Nation of N.Y. v. City of Sherrill, N.Y., 337 F.3d 139, 152 (2d Cir. 2003) (court applies same standard for Rule 12(b) and 12(c) dismissals), rev'd

on other grounds sub nom. <u>City of Sherrill, N.Y. v. Oneida Indian Nation of N.Y.</u>, 544 U.S. 197, 125 S.Ct. 1478, 161 L.Ed.2d 386 (2005); <u>Bloor v. Carro, Spanbock, Londin, Rodman & Fass</u>, 754 F.2d 57 (2d Cir. 1985).  However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true.  <u>New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions</u>, 235 F. Supp. 2d 123 (N.D.N.Y. 2002).

### 2.   Choice of Law

As a diversity action, the procedures are governed by federal law and rules, while the substantive law is governed by state law, <u>see</u> <u>Erie R.R. v. Tompkins</u>, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); <u>Ocean Ships, Inc. v. Stiles</u>, 315 F.3d 111, 116 n.4 (2d Cir. 2002).  A federal court sitting in diversity (as here) applies the choice of law rules from the state in which it sits, <u>Klaxon v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), here New York law.

Under New York's choice of law rules, "the first step in any case presenting a potential choice of law is to determine whether there is an actual conflict between the laws of the jurisdiction involved."  <u>Matter of Allstate Ins. Co.</u>, 81 N.Y.2d 219, 223, 597 N.Y.S.2d 904, 905 (1993).  This Court need not determine which jurisdiction's law applies where the relevant issue would turn out the same under the forum's law or the other cited jurisdiction and no true conflict exists, <u>Elgin Sweeper Co. v. Melson Inc.</u>, 884 F. Supp. 641, 648 (N.D.N.Y. 1995); <u>Howard v. Clifton Hydraulic Press Co.</u>, 830 F. Supp. 708, 712 (E.D.N.Y. 1993).

Another factor in identifying the proper jurisdiction's law under New York's choice of law rules is whether the law regulates conduct or allocates loss, <u>Padula v. Lilarn</u>

Properties Corp., 84 N.Y.2d 519, 522, 620 N.Y.S.2d 310, 313 (1994) (Docket No. 19, Pls. Memo. at 12-13).   Loss allocation, such as vicarious liability laws, guest statutes, or charitable immunity laws, id., and agency law, see Presbyterian Church of Sudan v. Talsiman Energy, Inc., 453 F. Supp.2d 633, 687-88 (S.D.N.Y. 2006) (plaintiff failed to address choice of law for question of which jurisdiction's agency law applies), "are those which prohibit, assign, or limit liability after the tort occurs," Padula, supra, 84 N.Y.2d at 522, 620 N.Y.S.2d at 313.   The Neumeier rules (Neumeier v. Kuehner, 31 N.Y.2d 121, 335 N.Y.S.2d 64 (1972)) apply to determine the appropriate substantive law for loss allocation depending upon the domicile of the parties and the interests of the applicable jurisdictions.

Contrast conduct regulation, such as Labor Law §§ 240, 241, as held in Padula, supra, 84 N.Y.2d at 523, 620 N.Y.S.2d at 313, where "conduct-regulating rules have the prophylactic effect of governing conduct to prevent injuries from occurring.  'If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders' (Cooney v. Osgood Mach., 81 N.Y.2d 66, 72, 595 N.Y.S.2d 919, 612 N.E.2d 277 [1993])," Padula, supra, 84 N.Y.2d at 522, 620 N.Y.S.2d at 313.

In personal injury actions, New York generally applies the law of the jurisdiction in which the injury occurred, see Cooney v. Osgood Machinery, Inc., 81 N.Y.2d 66, 595 N.Y.S.2d 919 (1993); Neumeier, supra, 31 N.Y.2d 121, 335 N.Y.S.2d 64; that would be Ontario and Canadian law here.

Under Neumeier, where the Plaintiffs are residents of one state (here, New York), the Defendants a second state (here, Georgia or Delaware, the state of incorporation),

and the accident occurred in a third jurisdiction (the Province of Ontario), for loss allocation matters Neumeier's third rule applies and the law of the site of the accident generally applies "but not if it can be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multistate system or producing great uncertainty for litigants," Neumeier, supra, 31 N.Y.2d at 128, 335 N.Y.S.2d at 70; In re Air Crash Near Clarence Center, N.Y., 983 F. Supp.2d 249, 253-54 (W.D.N.Y. 2013) (Skretny, C.J.) (see Docket No. 19, Pls. Memo. at 12-13; Docket No. 16, Defs. Memo. at 2, 6).

### 3.  Piercing the Corporate Veil in Ontario and New York

Under New York law "the doctrine of piercing the corporate veil is typically employed by a third party seeking to go behind the corporate existence in order to circumvent the limited liability of the owners and to hold them liable for some underlying corporate obligation," In Matter of Morris v. New York State Dep't of Tax. & Fin., 82 N.Y.2d 135, 140-41, 603 N.Y.S.2d 807, 810 (1993) (footnote omitted).  "The concept of piercing the corporate veil is a limitation on the accepted principles that a corporation exists independently of its owners, as a separate legal entity, that the owners are normally not liable for the debts of the corporation, and that it is perfectly legal to incorporate for the express purpose of limiting the liability of the corporate owners," id., 82 N.Y.2d at 140, 603 N.Y.S.2d at 810 (citation omitted).

As Defendants note (Docket No. 16, Defs. Memo. at 4), Plaintiffs as the parties seeking to pierce a corporate veil bear "a 'heavy burden' of demonstrating complete domination by the parent and that such domination was the instrument of fraud or otherwise resulted in inequitable consequences," Christensen v. SBM Indus., Inc.,

9 F. App'x 52, 53 (2d Cir. 2001) (summary Order); <u>TNS Holdings, Inc. v. MKI Sec. Corp.</u>, 92 N.Y.2d 335, 339, 680 N.Y.S.2d 891, 893 (1998).  Evidence only of domination by one corporation of another, even identical shareholders, officers, and directors, does not warrant piercing the second corporation, <u>see</u> <u>Spano v. V&J Nat'l Enterp. LLC</u>, 264 F. Supp.3d 440, 451 (W.D.N.Y. 2017) (Wolford, J.).  Additional evidence of fraud, inequity, or misfeasance is required, <u>id.</u>  "Indeed, even the fact that corporations have identical controlling stockholders, officers, and directors does not, by itself, warrant disregard of the separate corporate entities," <u>Bagel Bros Maple v. Ohio Farmers, Inc.</u>, 279 B.R. 55, 65 (Bankr. W.D.N.Y. 2002) (Kaplan, Bankr. J.) (quotations and citations omitted).

"The party seeking to pierce the corporate veil must establish that the owners, through their domination, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against that party such that a court in equity will intervene," <u>Morris</u>, <u>supra</u>, 82 N.Y.2d at 142, 603 N.Y.S.2d at 811 (citations omitted).

Here, Plaintiffs are New York State residents, Defendants are Delaware corporations headquartered in Georgia but licensed to do business in New York and the accident occurred in Ontario.  The parties dispute whether Ontario (as Defendants urge) or New York (as Plaintiffs argue) law applies.  If the standards for piercing the corporate veil are the same in Ontario and New York law, then there is no conflict and either jurisdiction's law applies.

The parties agree that Ontario and New York law regarding piercing the corporate veil are substantially similar (Docket No. 16, Defs. Memo. at 6; Docket No. 19, Pls. Memo. at 15).  Under Ontario law, to pierce a corporate veil, the party needs to allege that the

corporation was formed "for an illegal, fraudulent or improper purpose. But it can also be pierced if when incorporated those in control expressly direct a wrongful thing to be done," Mitchell v. Lewis, 2016 ONCA 903, at *7 (Ont. Ct. App. 2016) (Docket No. 16, Defs. Memo. at 6). Under New York law, piercing the corporate veil requires a fraudulent, wrongful, or unjust act (id. at 4-5), see, e.g., Spano, supra, 264 F. Supp.3d at 451.

Thus, under New York choice of law rules, there is no substantive dispute. For convenience, this Court will cite to New York law regarding piercing the corporate veil.

4.  Agency of Subsidiary to Parent

As noted by the United States District Court for the Southern District of New York, "at the motion to dismiss stage, the question 'is not whether plaintiffs have proved the existence of an agency relationship, merely whether they should have the chance to do so,'" In re South African Apartheid Litig., 617 F. Supp.2d 228, 273 (S.D.N.Y. 2009), mandamus denied, 727 F.3d 174 (2d Cir. 2013); In re Parmalat Secs. Litig., 501 F. Supp.2d 560, 588 (S.D.N.Y. 2007) (Docket No. 19, Pls. Memo. at 8).

Under New York law, "a parent company will not be held liable for the torts of its subsidiary unless it can be shown that the parent exercises complete dominion and control over the subsidiary," (Docket No. 19, Pls. Memo. at 8), holding that the plaintiff failed to establish material issue of fact whether that defendant "so controlled the operations of the subsidiary company that it should be held liable for the negligence of the delivery truck driver," Montes Serrano v. New York Times Co., 19 A.D.3d 577, 578, 797 N.Y.S.2d 135, 136 (2d Dep't 2005) (Docket No. 19, Pls. Memo. at 8).

Under Ontario law, a subsidiary is not liable as an alter ego unless the subsidiary is under the complete control of the parent and the subsidiary is "nothing more than a

conduit used by the parent to avoid liability," <u>Gregorio v. Intrans-Corp.</u>, 18 O.R.3d 527, ¶ 28 (Ont. Ct. App. 1994) (Docket No. 21, Defs. Reply Memo. at 8).

> 5.  Leave to Amend

Plaintiffs alternatively seek leave to replead if there are deficiencies with the Complaint (Docket No. 19, Pls. Memo. at 18).   Under Federal Rule of Civil Procedure 15(a), amendment of pleadings after the time to do so as of right requires either consent of all parties or by leave of the Court.  The parties here have not indicated Defendants' consent to an amendment and Plaintiffs have not submitted a proposed amendment.  Motions for leave to amend the Complaint are to be freely given when justice requires.  Granting such leave is within the sound discretion of the Court.  <u>Foman v. Davis</u>, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 401 U.S. 321, 330, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971).  "In the absence of any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.–the leave sought should, as the rules require, be 'freely given.'" <u>Foman</u>, <u>supra</u>, 371 U.S. at 182 (quoting Fed. R. Civ. P. 15(a)).

> B.  Parties' Contentions

Defendants moved for judgment dismissing the Complaint under Federal Rule of Civil Procedure 12(c).  They argue that Plaintiffs have not alleged a fraudulent, wrongful, or unjust act that would allow piercing the corporate veil of CCR-Canada to reach Defendants under either New York or Canadian law (Docket No. 16, Defs. Memo. at 1, 4-6).  To Defendants, Plaintiffs' theory is that CCR-Canada is vicariously liable for the

collision by its driver, Rappazzo, and Plaintiffs then impute this vicarious liability to Defendants Coke and CCR by piercing CCR-Canada's corporate veil (see Docket No. 1, Ex. B, Compl. ¶ 41).

In response, Plaintiffs argue liability due to CCR-Canada's agency for Coke and CCR (Docket No. 19, Pls. Memo. at 6, 8-9).  They contend that the Complaint alleges the piercing of CCR-Canada's corporate veil to reach Defendants (id. at 10-11).  They next argue that New York law (rather than Ontario) applies (id. at 12-16).  They cite four Canadian cases on the principal liability for its agent's actions (Docket No. 19, Pls. Memo. at 16, 17, Exs.) as an alternative argument that, under Canadian law, CCR-Canada was agent for Defendants, as it would be under New York agency law (id. at 16-17).

Alternatively, if this Court requires further specificity for their agency or corporate veil arguments, Plaintiffs seek leave to amend the Complaint (id. at 18).

In reply, Defendants argue that Plaintiffs' agency argument also is insufficiently pled, that any factual allegations fail to plausibly allege a cause of action (Docket No. 21, Defs. Reply Memo. at 1, 2, 4).  As a Motion to Dismiss, they contend that this Court need not accept Plaintiffs' legal conclusions (id. at 3).  Defendants renew their contention that Plaintiffs have not pled piercing the corporate veil of CCR-Canada (id. at 6).  Defendants refute the existence of any agency relationship was alleged between Coke, CCR, and CCR-Canada (id. at 3-6).  The choice of law need not be resolved for this motion, but Defendants alternatively offer that the applicable jurisdiction's law is Ontario's or Canadian law (id. at 1, 6-7).

Defendants did not take a position on possible amendment of the Complaint, although by moving to dismiss under Rule 12(c) implies that they would object to amendment.

C.  Piercing CCR-Canada's Corporate Veil to Reach Defendants

1.  Choice of Law

The parties agree (Docket No. 16, Defs. Memo. at 6; Docket No. 19, Pls. Memo. at 15) that Ontario (or Canadian) law and New York law are similar for piercing the corporate veil.  Under New York's choice of law principles, New York substantive law regarding piercing the corporate veil applies.

2.  Piercing CCR-Canada's Corporate Veil under New York Law

Plaintiffs have not named CCR-Canada (or Rappazzo) as a Defendant.  Instead, they sue Coke and CCR, arguing that Rappazzo's vicarious liability from CCR-Canada extends to these Defendants because of their ownership and control of CCR-Canada.

Applying New York piercing the corporate veil law, Plaintiffs fail to allege that CCR-Canada's incorporation was a product of fraud, misconduct, or was an unjust act to warrant piercing CCR-Canada's corporate veil.  Despite Plaintiffs alleging close corporate affiliation between Defendants and CCR-Canada, even the internal disregard by Coke of the corporate distinctions between its subsidiaries CCR and CCR-Canada, Plaintiffs do not allege this arrangement was the product of fraud or misconduct or results in an unjust act.

Plaintiffs did not meet the standard they cited for piercing the corporate veil, that is showing that CCR-Canada "was dominated as to the transaction attacked and that such domination was the instrument of fraud or otherwise result in wrongful or inequitable

consequences" (Docket No. 19, Pls. Memo. at 10, citing <u>TNS Holdings</u>, <u>supra</u>, 92 N.Y.2d at 339, 680 N.Y.S.2d at 893), <u>see</u> <u>Morris</u>, <u>supra</u>, 82 N.Y.2d at 141, 603 N.Y.S.2d at 810. While Plaintiffs assert Defendants' ownership of CCR-Canada, they fail to meet their heavy burden of demonstrating that this complete domination by Defendants was the instrument of fraud or other wrongdoing or Defendants' control extended to Rappazzo's driving CCR-Canada's truck on the Queen Elizabeth Way.  The arguments Plaintiffs raise in support of piercing (<u>id.</u> at 11) is the objection to application of Ontario law (or potentially litigating this case in Ontario) rather than the relationships between the corporate Defendants and CCR-Canada to show that the corporate nature of CCR-Canada should be disregarded.  If deemed an unjust act, it only arises from the differences of law between Ontario and New York and not from Defendants' action.  Defendants' internal disregard of the corporate form of CCR-Canada by allegedly treating it as a "segment" of Coke without more does not establish a basis for this Court to disregard CCR-Canada's incorporation.  Coke and CCR are entitled to establish wholly owned subsidiaries, such as CCR-Canada, to keep Defendants at arm's length from CCR-Canada's obligations.

Again, as Plaintiffs point out (<u>id.</u>, citing <u>Morris</u>, <u>supra</u>, 82 N.Y.2d 135, 141, 603 N.Y.S.2d at 810), piercing a corporate veil is dependent upon the facts and circumstances alleged.  Here, Plaintiff James Giarla was hit by a truck owned by CCR-Canada and driven by one of its employees, Rappazzo.  Plaintiffs generally allege that corporate parents CCR and Coke owned and operated CCR-Canada, now arguing that Defendants "completely dominated CCR-Canada in all phases of its operation" (<u>id.</u> at 11). The Complaint, however, alleges the ownership and global operation of Coke (Docket No. 1, Ex. B, Compl. ¶¶ 16-19, 25-26, 27-29, 64-81), including CCR operating a fleet of

trucks and other vehicles for distribution and delivery of beverage products (id. ¶ 80). They fail to allege fraud, misconduct that alleges that CCR-Canada's incorporation was in effect a sham and the real operators are Defendants.

Defendants' motion (Docket No. 16) for judgment on the pleadings under Rule 12(c) dismissing Plaintiffs' allegations of piercing the corporate veil of CCR-Canada is granted.

### D.  Agency Liability

Plaintiffs alternatively argues that principles of agency extend liability to Defendants for the actions of CCR-Canada (Docket No. 19, Pls. Memo. at 7-9), also contending under Canadian law that the principal is liable for torts committed within the authority of its agent (id. at 16), Keddie v. Canada Life Assur. Co., 1999 BCCA 541 (B.C. Ct. App. 1999) (id. at 16, Ex. A).

Defendants reply that, under applicable Canadian law, a subsidiary is an agent of the parent company only if the subsidiary is the "alter ego" of the parent (Docket No. 21, Defs. Reply Memo. at 8).  Defendants distinguish corporate agency from employer-employee agency Plaintiffs implicitly relied upon (Docket No. 21, Defs. Reply Memo. at 8).

#### 1.  Choice of Law

Plaintiffs cite to Canadian law for its similarity to New York law that generally a principal is responsible for the acts of its agent (Docket No. 19, Pls. Memo. at 16-17, Ex. A).  Two of the four Canadian cases cited (and opinions reproduced by Plaintiffs) are from the British Columbia Court of Appeal, Thiessen v. Clarica Life Ins. Co., 2002 BCCA 501 (B.C. Ct. App. 2002); Keddie, supra, 1999 BCCA 541 (B.C. Ct. App. 1999).  Although

citing British Columbia cases, Plaintiffs fail to explain whether British Columbia law of agency would be the same as in Ontario to make these precedents relevant in this case. Keddie and Thiessen are further distinguished because they involved allegations that an insurance broker was acting as an agent for the insurance company, Keddie, supra, 1999 BCCA 541, at 13-23, 23 (distinguishing between agency and being a broker); Thiessen, supra, 2002 BCCA 501, at 2 (issue is "who is to bear the risk of a defalcating life insurance representative").

The two other cases they cited are from the Supreme Court of Canada, Bazley v. Curry, 2 R.C.S. 534 (1999); 671122 Ontario Ltd. v. Sagaz Indus. Canada Inc., 2 R.C.S. 983 (2001).   Bazley held that an employer is vicariously liable for the actions of its employee, there the sexual assault by the employee, 2 R.S.C. at 563, 543-63.   Citing Bazley, the Canadian Supreme Court in 671122 Ontario Ltd. denied defendant's vicarious liability for the acts of its independent consultant, 2 R.S.C. at 988, 995-96.   These cases support extending liability for Rappazzo's actions to CCR-Canada in the employment context, but they fail to further extend that liability to Defendants as the corporate parent of CCR-Canada.

Plaintiffs do not cite Canadian or Ontario cases involving subsidiaries and the parent corporation's liability for their actions as agents for the parent.  Plaintiffs have not addressed the liability of a subsidiary to the parent.  They merely allege the CCR-Canada is the wholly owned subsidiary of Coke (Docket No. 1, Ex. B, Compl. ¶ 27).

Defendants cite to Gregorie v. Intrans-Corp., supra, 18 O.R.3d 527 (Ont. Ct. App. 1994), that a subsidiary will not be found to be the alter ego of the parent corporation "unless the subsidiary is under the complete control of the parent and is nothing more

than a conduit used by the parent to avoid liability," id. ¶ 28 (Docket No. 21, Defs. Reply Memo. at 8).

The parties have not concluded that Ontario and New York agency laws are substantially similar.  But comparing the cited provisions of these jurisdictions' law on agency, both are similar.  Ontario and New York agency laws both rest upon the degree of control by the parent corporation over the subsidiary to conclude that the subsidiary also acts as an agent for the parent.

Ontario agency law provides that a subsidiary will not be found to be the alter ego of the parent corporation "unless the subsidiary is under the complete control of the parent and is nothing more than a conduit used by the parent to avoid liability," Gregorie v. Intrans-Corp., supra, 18 O.R.3d 527, ¶ 28 (id.); see Aluminum Co. of Canada Ltd. v. Toronto (City), [1944] S.C.F. 267, 271 (¶ 16) (S.C.C. 1944); Kentucky Fried Chicken Canada v. Scott's Food Servs., Inc., 35 B.L.R. (2d) 21, at ¶¶ 59-62 (Ont. Gen. Div. 1997) (subsidiary held not alter ego or agent of parent corporation even though parent controlled long-term decisions and budget of subsidiary, subsidiary ran substantial day-to-day operations), rev'd on different grounds, 118 O.A.C. 357 (Ont. Ct. App. 1998).

New York agency law requires an allegation that the parent corporation "so controlled the operations of the subsidiary company that it should be held liable for the negligence of the delivery truck driver," Montes Serrano, supra, 19 A.D.3d at 578, 797 N.Y.S.2d at 136 (Docket No. 19, Pls. Memo. at 8).

At the threshold and under New York choice of law principles, there is no conflict. Both New York and Ontario determine that a subsidiary's agency exists from the control

by the parent corporation over the subsidiary.  On choice of law principles, absent a conflict between these two jurisdictions' agency laws, New York law applies.

### 2.  Agency Law

Thus, under New York agency law, the corporate subsidiary can be shown to be the agent of the parent either by the subsidiary doing all the business that the parent could do or the subsidiary was a "mere department" of the parent (Docket No. 19, Pls. Memo. at 8).  Four factors to establish a subsidiary is a "mere department" is common ownership with the parent; financial dependency of the subsidiary to the parent; degree of parent's involvement in the selection and assignment of subsidiary executive personnel and failure to observe corporate formalities; and the degree of the parent's control of the subsidiary's marketing and operational policies.  Darden v. DaimlerChrysler N. Am. Holding Corp., 191 F. Supp. 2d 382, 387, 388 (S.D.N.Y. 2002) (id.); see also Kentucky Fried Chicken Canada, supra, 35 B.L.R. (2d) 21, at ¶ 59 (Ontario agency law has six factors who owns profits, who provides day-to-day operation of subsidiary, who was the "brains behind" the day-to-day operation, who made policy and financial decisions, whether profits were directly traceable to the skill and direction of the parent, and whether control by parent was constant or merely periodic, citing Smith, Stone & Knight Ltd. v. Birmingham (City), 4 All E.R. 116 (Eng. K.B. 1939)).

Agency also is manifested if the parent corporation gives actual authority to the subsidiary to act on its behalf, Fletcher v. Atex, Inc., 68 F.3d 1451, 1461-62 (2d Cir. 1995) (see Docket No. 21, Defs. Reply Memo. at 4), or apparent authority where one can see acts of the parent corporation which reasonably give an appearance of authority for the

subsidiary to conduct the transaction, id. at 1462 (quoting Greene v. Hellman, 51 N.Y.2d 197, 204, 433 N.Y.S.2d 75, 80 (1980)).

Plaintiffs argues that they allege sufficiently that CCR-Canada is the agent of Defendants (id. at 9).  Defendants deny that Plaintiffs alleged facts that CCR-Canada is a mere department of Defendants or that CCR-Canada had no independent functioning (Docket No. 21, Defs. Reply Memo. at 8).

Plaintiffs, however, have not alleged CCR-Canada had the actual authority from Defendants to act as their agents.  The Complaint also does not allege the appearance of Defendants' authorizing CCR-Canada to act on their behalf to allege apparent authority.

Plaintiffs allege that Coke is the world's largest beverage company that operates "a worldwide system with subsidiaries across the globe, many of which are wholly-owned subsidiaries" (Docket No. 1, Ex. B, Compl. ¶¶ 8, 10), marketing and distributing products throughout New York and Ontario (among other places) through its global distribution system (id. ¶ 12).  In 2010, Coke acquired Coca Cola Enterprises, the bottler, and thus directly owned 100% of Coca-Cola Refreshments (later renamed CCR) (id. ¶¶ 16, 17, 18, 19).  CCR-Canada allegedly is the wholly owned subsidiary of CCR (id. ¶ 27) and in turn Coke (id. ¶ 28).

Plaintiffs allege that CCR "operated in Canada through the CCR-CANADA unit" (id. ¶ 29).  In establishing jurisdiction in New York State, Plaintiffs claim that Coke, as the parent, "exercises control over its subsidiaries, CCR and CCR CANADA, which is so pervasive, controlling and continuous as part of the Defendant [Coke's] organizational structure and system that the said subsidiaries' corporate independence from the parent

company is essentially non-existent" (<u>id.</u> ¶ 56).   They claim common ownership, interlocking directorates, and executive management of CCR and CCR-Canada with Coke (<u>id.</u> ¶ 64).  They conclude that CCR-Canada was under the direction and complete control of Defendants (<u>id.</u> ¶ 69).

Although they make the above allegations of this complete control by Defendants of CCR-Canada, Plaintiffs fail to allege one factor to establish agency, that Coke and CCR select CCR-Canada's management.

Thus, Defendants' Motion for Judgment (Docket No. 16) pursuant to Rule 12(c) to dismiss the agency claims in the Complaint (and the entire Complaint) is granted.

E.  Leave to Amend

Plaintiffs alternatively ask for leave to replead their Complaint (Docket No. 19, Pls. Memo. at 18).  If needed, they offer to amend to specify principal-agency or piercing the corporate veil (<u>id.</u>).  Again, Defendants took no position on this alternative; Defendants have only voiced their objection to them remaining as parties in this case.

Before this Court are the questions can Plaintiffs amend to allege agency claims and whether an unspecified amendment to "adequately set for the plaintiff's claims against the defendants" (<u>id.</u>) would be futile, which Plaintiffs deny (<u>id.</u>).  Plaintiffs have not provided a proposed Amended Complaint or state the basis for amendment but offers to amend to specify piercing the corporate veil or principal-agency relationship.  They have not stated whether their clarifying amendment would add CCR-Canada as a Defendant.

Absent an amendment stating that CCR-Canada's incorporation was fraudulent or created to conduct wrongdoing (especially leading to the truck accident at issue here), a further amendment alleging piercing the corporate veil here would be futile.

As for an amended pleading specifying the agency relationship, the original Complaint elaborates on the corporate organization and relationships between Defendants and CCR-Canada but fails to allege Defendants' role in the management and operation of CCR-Canada.

Again, "the question 'is not whether plaintiffs have proved the existence of an agency relationship, merely whether they should have the chance to do so,'" In re South African Apartheid Litig., supra, 617 F. Supp.2d at 273.  It would not be futile for Plaintiffs to amend their Complaint to try to state an agency relationship between Defendants and CCR-Canada.  If the facts warrant, Plaintiffs could allege the day-to-day operations of CCR-Canada and show whether Defendants so control CCR-Canada to render it an agent for these principal corporations.  Leave to amend to specify the agency relationship between Defendants and CCR-Canada (see Docket No. 19, Pls. Memo. at 18) is granted.

Plaintiffs have fourteen (14) days from entry of this Order to file and serve their Motion for Leave to Amend the Complaint with the proposed Amended Complaint and a redline/strikeout version comparing the original pleading with the proposal, see W.D.N.Y. Loc. Civ. R. 15(b).

## IV.   Conclusion

Plaintiffs here cannot reach non-party CCR-Canada by suing the named Defendants here.  Defendants' Motion for Judgment (pursuant to Rule 12(c) (Docket No. 16)) to Dismiss this case is granted.

Plaintiffs' alternative seeking leave to amend (Docket No. 19, Pls. Memo. at 18) to further specify piercing the corporate veil of CCR-Canada would be futile and is denied. Leave to amend (id.) to specify the agency relationship between Defendants and CCR-

Canada (Docket No. 19, Pls. Memo. at 18), however, is granted; Plaintiffs have fourteen (14) days from filing this Order to file motion for leave to amend with proposed Amended Complaint.

## V.    Orders

IT IS HEREBY ORDERED, that Defendants' Motion to Dismiss (Docket No. 16) is GRANTED.

IT IS FURTHER ORDERED, that leave to amend this Complaint (see Docket No. 19, Pls. Memo. at 18) is GRANTED.

SO ORDERED.


Dated:        March 23, 2021
              Buffalo, New York


                                                 s/William M. Skretny
                                              WILLIAM M. SKRETNY
                                              United States District Judge